## Barry Estate

*Therman P. Britt*, for accountant.

HOLLAND, P. J., May 15, 1951.—William Barry, having a possible interest in this account, and the audit and adjudication thereof, was entitled to notice according to the statutes and rules of court. Strictly speaking, his location being unknown, he having deliberately concealed it, or, at least negligently failed to reveal it, the only notice he was entitled to was the advertising of notice of the audit by the register. The account appeared on the regular April list of 1950, being no. 1 on that list, and was called for audit on the regular audit day, April 3, 1950. It was audited that day. William Barry did not appear. On December 15, 1950, this court, in order to give him further opportunity to appear, by decree fixed February 19, 1951, at 10 a.m., at the orphans' court room at Norristown, Pa., as the time and place for a continued audit, and directed notice to be given him thereof by advertisement, this notice to state that evidence would be taken as to the circumstances and conditions under which testator had made the will and that its interpretation would be considered. Proofs of the compliance with this decree are hereto attached. He did not appear at this continued

audit. As a result of this advertisement an anonymous communication was received by the accountant and one by the court. The latter is hereto attached.

This communication purported to come from one of his schoolmates and indicates he was in the United States Army. Counsel for the accountant wrote to the Adjutant's General Office and received a reply therefrom to the effect that William Barry was separated from the military service in May 1948, and that there was no record of his having reëntered the service. His location is still unknown.

The court and the accountant have done all possible to give him notice and he has received all the notice to which he is entitled. As this court stated in Kelsey Estate, 1 Fid. Rep. 267:

"What principle of justice applies in this situation? It might be defined as a rule of common sense as applied to practical human relations. While it is the duty of the sender of the notice to use all reasonable means to see that the addressee gets it, it cannot be said that the addressee is free of all responsibility to make himself reasonably available. He must be expected to be aware of his interests, their extent, and their location, and, if he contemplates going to a place or entering upon travels that he must know will render him inaccessible to communication, it is not unreasonable to place upon him the responsibility of leaving his affairs in charge of some responsible agent or attorney in fact of his choice who would be readily accessible to notice of proceedings affecting his interests. *Even less consideration is due one who negligently becomes a wanderer or drifter.* Were this not the law, a premium would be put on negligence, sloth, and dilatoriness, while thrift, alertness, and a sense of responsibility would be put at a discount. Proceedings would be unduly delayed and other parties interested therein, who

were diligent, would, through no fault of their own, suffer inconvenience, if nothing worse."

In the latter case the location of the party was known, but the principle involved applies with greater force where the party's location is unknown.